Melvin Griffin was indicted, tried and convicted in the Circuit Court of Bolivar County for attempting to obtain a controlled substance, e.g., Demerol, by misrepresentation and fraud. He was sentenced to four (4) years in the custody of the Mississippi Department of Corrections and has appealed to this Court, assigning the following seven (7) errors in the trial below:
 I. THE VERDICT OF THE JURY IS CONTRARY TO, AND AGAINST THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE.
 II. THE LOWER COURT ERRED BY OVERRULING THE APPELLANT'S MOTION FOR RANDOM ASSIGNMENT OF JURORS.
 III. THE LOWER COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR SUBPOENA DUCES TECUM.
 IV. THE LOWER COURT ERRED BY PERMITTING THE DISTRICT ATTORNEY TO EXAMINE A STATE'S WITNESS OUTSIDE THE PRESENCE OF THE JURY WHEN THE SOLE PURPOSE OF SUCH EXAMINATION WAS TO INTIMIDATE THE WITNESS.
 V. THE LOWER COURT ERRED BY OVERRULING APPELLANT'S MOTIONS FOR MISTRIAL BASED ON IMPROPER AND PREJUDICIAL REMARKS OF THE PROSECUTING ATTORNEY MADE DURING CLOSING ARGUMENT.
 VI. THE LOWER COURT ERRED BY REFUSING INSTRUCTION NO. 6297-D-3 REGARDING THE TESTIMONY OF A WITNESS WHO TESTIFIES AS A RESULT OF A PLEA BARGAIN AGREEMENT.
 VII. THE LOWER COURT ERRED BY REFUSING INSTRUCTION NO. *Page 378 
6297-D-4 REGARDING THE TESTIMONY OF AN ADMITTED ACCOMPLICE.
On February 7, 1984, appellant went to the home of Connie Lipe in Cleveland, Mississippi, and sought her and Sandra Lipe, her sister-in-law, who was present, to get a prescription filled for him that was written out for a Mrs. Clara Coleman. The prescription purported to have been signed by Dr. Walter Gough.
According to Richard Crenshaw, a pharmacist at the Revco Drugstore in Cleveland, Mississippi, a girl later identified as Sandra Lipe presented him with a prescription for Demerol 100 mg. on February 7, 1984. The prescription appeared to be a photostatic copy and Crenshaw telephoned Dr. Gough, who informed him that he did not write the prescription in question. At the conclusion of the conversation with Dr. Gough, Crenshaw made a telephone call to the police, informing them that he was of the opinion someone possessed an illegal prescription. Investigator Ollie White responded to the call from Crenshaw and went to Revco Drugstore. His investigation resulted in the arrest of Connie Lipe, Sandra Lipe and Melvin Griffin.
When Officer White approached the Revco Drugstore, he saw appellant and one Larry Williams running from the direction of the drugstore. He stopped them and requested that they follow him into the store. After learning that Sandra Lipe passed the prescription, Officer White told appellant and Larry Williams they were free to leave. Subsequently, he discovered that Connie Lipe had driven Sandra to the drugstore and was waiting for her in an automobile. Officer White told Connie and Sandra to follow him to the emergency room at the Bolivar County Hospital to question Dr. Gough about the prescription. After learning from Dr. Gough that he did not write the prescription, Officer White arrested Connie and Sandra and took them to the police station where both gave statements to the police. While taking the statements, the appellant phoned Officer White to meet him at the emergency room of the Bolivar County Hospital, because he had straightened everything out with Dr. Gough. Appellant attempted to persuade Dr. Gough to admit writing the prescription without success. Officer White took a statement from appellant wherein he admitted taking the prescription to Connie's house.
Sandra and Connie Lipe entered pleas of guilty and testified for the prosecution. Sandra said that appellant asked her and Connie to take the prescription which he had to the drugstore to be filled. Connie testified that appellant told her his aunt was having a gallbladder attack and needed her to take the prescription. One Freddie Childs testified that he drove appellant in an automobile to the home of Connie Lipe on the night of February 7, 1984, and that appellant told him his purpose was to get a prescription filled.
Appellant testified in his own behalf that Dr. Gough periodically prescribed drugs for him on request; that some of the 50-60 prescriptions given to him were for Demerol; that Dr. Gough wrote prescriptions in females' names to prevent incriminating himself; and that Dr. Gough wrote the questioned prescription for him in the name of Clara Coleman. All that testimony was denied by Dr. Gough.
 I.
Appellant contends that the verdict of the jury finding him guilty was against the overwhelming weight of the evidence. Mississippi Code Annotated § 41-29-144(1) (1972), under which section appellant was indicted, provides:
 It is unlawful for any person knowingly or intentionally to acquire or obtain possession or attempt to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge.
The simple answer to the first contention of appellant is that the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict. *Page 379 Billiot v. State, 454 So.2d 445 (Miss. 1984); Vickers v.State, 323 So.2d 743, 744 (Miss. 1975); Wilson v. State,234 So.2d 303 (Miss. 1970).
We are of the opinion that the evidence introduced on behalf of the State, together with reasonable inferences drawn therefrom, amply supported the verdict of guilty. Fairley v. State,467 So.2d 894, 902 (Miss. 1985). Therefore, this assignment of error is rejected.
 II. — IV.
Appellant contends (2) that the lower court erred in overruling appellant's motion for random assignment of jurors. He asserts that the requirements of Mississippi Code Annotated § 13-5-26
(Supp. 1985), were not followed by the lower court. That section provides:
 (1) The circuit clerk shall maintain a jury box and shall place therein the names or identifying numbers of all prospective jurors drawn from the jury wheel.
 (2) A judge or any court or any other state or county official having authority to conduct a trial or hearing with a jury within the county may direct the circuit clerk to draw and assign to that court or official the number of jurors he deems necessary for one or more jury panels or as required by law for a grand jury. Upon receipt of the direction, and in a manner prescribed by the court, the circuit clerk shall publicly draw at random from the jury box the number or jurors specified. The jurors drawn for jury service shall be assigned at random by the clerk to each jury panel in a manner prescribed by the court.
Mississippi Code Annotated § 13-5-87 (1972), further provides:
 All the provisions of law in relation to the listing, drawing, summoning and impaneling juries are directory merely, and a jury listed, drawn, summoned or impaneled, though in an informal or irregular manner, shall be deemed a legal jury after it shall have been impaneled and sworn, and it shall have the power to perform all the duties devolving on the jury.
The trial judge questioned the circuit clerk with reference to the drawing and assigning of jurors.
 BY THE COURT: Mrs. Lindsey, were the jurors drawn at random as directed by order of the Court?
 BY MRS. LINDSEY: Yes, sir.
 BY THE COURT: Were they assigned to the jury list in the random order in which they were drawn?
 BY MRS. LINDSEY: Yes, sir.
 BY THE COURT: Are they now in that random order excluding those who have been excused and those who failed to appear — do they appear in the random order in which they were drawn on the jury venire facias?
 BY MRS. LINDSEY: Yes, sir.
 BY THE COURT: The Court directs that the jurors be empaneled as petit jurors in the random order in which they were originally drawn.
 (Clerk calls roll of jurors and are seated in the random order in which they were drawn)
 BY MR. BUCK: Your Honor, may we approach the bench?
 BY THE COURT: Yes, sir.
We are of the opinion that there was compliance with the statute by the circuit clerk, or certainly a substantial compliance; that there was no indication of prejudice or fraud in the method used; and that there is no merit in the assignment of error. Harris v. State, 406 So.2d 823 (Miss. 1981).
Appellant contends (3) that the lower court erred in denying appellant's motion for a subpoena duces tecum. On cross-examination of Dr. Gough, a State's witness, he admitted that he kept an informal record of medication which he prescribed to those not admitted to the hospital. At that point, defense counsel moved the court for a subpoena duces tecum, returnable instanter. After considering the motion, out of the hearing of the jury, the lower court denied the motion with the following observation: *Page 380 
 BY THE COURT: All right, sir. With regard to that particular motion for a subpoena duces tecum instanter, the Court did not go into it any further at the time it was raised; however, the record should reflect that there was no showing at the time this motion for a subpoena instanter was made — there was no showing that there was any diligence on the part of the Defendant or counsel for the defense to talk with the State's witness, Dr. Gough, prior to the trial or any indication or any showing at all that the motion for a subpoena duces tecum was timely made. That was one of the reasons that the Court had denied that. There was no showing at all that that could not have been done prior to that time. It was only during cross-examination that counsel wished to stop the trial and send out for a subpoena duces tecum.
In Williams v. State, 239 Miss. 839, 125 So.2d 535 (1960), the Court held that, in order to obtain a subpoena duces tecum, it is required that a verified petition be filed in the case, describing the papers or books which are desired with as much certainty and particularity as is practical, considering all the circumstances of the case, so that the judge may know their character and whether the request be reasonable and proper.Williams further stated:
 The petition [for subpoena duces tecum] must state sufficient facts to show that papers and books sought are material as evidence in the case, and to show their purpose and materiality, that a judge may protect the witness against an unnecessary or irrelevant production.
239 Miss. at 843, 125 So.2d at 536.
We are of the opinion that, under the facts and circumstances of this case, the lower court did not abuse its discretion in declining to sustain the motion for a subpoena duces tecum directed to Dr. Gough.
The appellant contends (1) that the lower court erred in permitting the district attorney to examine a State's witness outside the presence of the jury. He asserts that the procedure was followed in order to intimidate the witness.
Appellant consumes less than a page in his brief discussing this claimed error. When the witness Freddie Childs was called by the State, the prosecuting attorney made known to the court that the State had learned the witness would repudiate testimony which he proposed to give before the jury. The lower court excused the jury and permitted the prosecuting attorney to examine the witness in the absence of the jury. Appellant contends that it was not shown the witness was a hostile witness.
Appellant's argument is misplaced. The witness did not repudiate his previous statements and proposed testimony; he was not examined as a hostile witness; and there was no indication of any intimidation of the witness. When the jury returned to the courtroom, he testified openly and without incident, and was not treated by the State as a hostile witness. See Hooks v. State,197 So.2d 238 (Miss. 1967); Gardner v. State, 368 So.2d 245
(Miss. 1979). There is no merit in the assignment.
 V.
Appellant contends (5) that the lower court erred in overruling his motion for mistrial based on improper and prejudicial remarks of the prosecuting attorney made during closing argument. The argument of the prosecuting attorney, which appellant claims to be offensive and prejudicial to him, and the ruling of the court thereon, follows:
 BY MR. MELLEN: . . . And the Defendant has the opportunity if he wants to to have handwriting experts all he wants to come up here and to testify from the stand and he did not —
 BY MR. WALLS: — Your Honor, I object to that. The Defendant has no obligation to put any witnesses on.
 BY THE COURT: He said he had the right to. He didn't say he had the obligation to. It's argument.
 BY MR. WALLS: But that insinuates it.
 BY THE COURT: It's argument. *Page 381 
 MR. MELLEN CONTINUES HIS CLOSING ARGUMENT TO WHICH THE FOLLOWING OBJECTION WAS MADE:
 BY MR. MELLEN: . . . Now, he took the stand for himself and that's his proof and that is what he wants you to believe. Where are the pharmacists that wrote all these prescriptions — where are they? Have they testified for Melvin Griffin —
 BY MR. WALLS: — Your Honor, I am going to object to that. I think that is improper.
 BY THE COURT: I sustain the objection. The jury will disregard that.
Appellant specifically contends that the purpose of the argument was to suggest that the appellant should be found guilty because of the weakness of his case or defense as manifested by his failure to call certain witnesses or present particular proof. Of course, it is improper for the State to comment on the defendant's failure to call a witness whose testimony was as available to the State as to the defendant. Phillips v. State,183 So.2d 908 (Miss. 1966); Brown v. State, 200 Miss. 881,27 So.2d 838 (1946). There were two remarks made by the prosecuting attorney to which objection was made. On the first, involving handwriting experts, the reasoning of the court was that the remark did not violate the established principle of commenting on the defendant's failure to call a witness whose testimony is as available to the State as to the defendant. On the second remark of the district attorney, the lower court sustained the objection. We are of the opinion that the lower court did not abuse its discretion in declining to declare a mistrial for the remarks of the district attorney, and are further of the opinion that the remarks were not prejudicial to the appellant so as to constitute reversible error.
 VI. — VII.
Appellant contends (6) that the lower court erred in declining to grant Instruction No. 6297-D-3 regarding testimony of a witness, who testifies as a result of a plea bargain agreement, and (7) that the lower court erred in refusing Instruction No. 6297-D-4 regarding the testimony of an admitted accomplice.
The alleged plea bargain here relates to the guilty pleas of Sandra Lipe and Connie Lipe. However, they testified on cross-examination that they had not made a plea bargain with the State, and that they had entered pleas of guilty, e.g., had thrown themselves upon the mercy of the court. The record is entirely absent any indication of a plea bargain.
Instruction No. 6297-D-4 is a cautionary instruction, which would tell the jury that the testimony of Connie Lee Lipe and Sandra Jo Lipe, accomplices, should be weighed with great care, caution and distrust. The lower court gave such an instruction, though not in the exact language as D-4. It is elementary that a trial court is not required to give repetitious instructions on a point, even though the instruction may be couched in different language. There is no merit to Assignments VI and VII.
There being no reversible errors in the record, the judgment of the lower court is affirmed.
AFFIRMED.
WALKER, C.J., HAWKINS, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.