811 So.2d 440 (2001)
Norman WILKS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01637-COA.
Court of Appeals of Mississippi.
March 13, 2001.
*442 Morris Sweatt, Sr., Columbia, Attorney for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
Before SOUTHWICK, P.J., IRVING, and MYERS, JJ.
IRVING, J., for the Court:
¶ 1. This appeal arises from the Circuit Court of Lamar County where Norman Wilks was tried and found guilty of the sale or transfer of cocaine. Wilks was sentenced as a habitual offender to a term of thirty years in the custody of the Mississippi Department of Corrections. Wilks has perfected this appeal requesting this Court to review (1) whether the circuit court committed reversible error when it denied his challenge to the jury panel of venire persons and (2) whether it was error for the trial court to (a) deny his motion for a directed verdict and (b) to deny instruction D 1, and (3) whether the verdict was contrary to the weight and sufficiency of the evidence.
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. Lewis Pearly worked as a confidential informant for the Pearl River Narcotics Task Force in Purvis, Mississippi. His *443 work involved controlled drug purchases. In December 1996, while seeking to purchase crack cocaine, Lewis encountered Norman Wilks. After inviting Wilks into his car, the two men drove around town in search of cocaine. During this excursion, Lewis was outfitted with a body wire and video surveillance equipment in his car. They traveled to the area of Bright and Oak Streets, where Wilks exited the vehicle. Lewis testified that when Wilks returned to the car Wilks handed him two rocks of cocaine. Lewis explained that he gave Wilks $30 in exchange for the crack. Lewis also testified that he gave Wilks a two or three dollar "tip."
¶ 4. The substance was taken to the crime lab and was positively identified as cocaine. During the trial, the State presented an audiotape and two videotapes. The original videotape, an 8mm version, was without an audio component. To facilitate its presentation during the trial, the 8mm tape was dubbed onto a VHS version and combined with the corresponding audio component. All three versions were admitted into evidence and presented to the jury.
¶ 5. On the videotape, Wilks walks up to Lewis's vehicle and reaches into the vehicle. However, Wilks's hands were not visible once inside the vehicle.

ANALYSIS OF THE ISSUES PRESENTED

I. Batson Challenge
¶ 6. Wilks, an African-American male, argues that his right to be tried by a jury of his peers was violated because the panel of venire persons included only four African Americans. Defense counsel objected to the racial make-up of the jury panel, asserting Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), as the supporting authority.
¶ 7. In Batson, the United States Supreme Court opined that a defendant has a right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria. Id. at 85-6, 106 S.Ct. 1712. The Batson court further reasoned that the Fourteenth Amendment guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race. Id. at 86, 106 S.Ct. 1712. Purposeful discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure. Id.
¶ 8. Under Batson, for a defendant to successfully raise a challenge to the selection of the venire persons, the defendant must first make out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of a discriminatory purpose. Id. at 93-4, 106 S.Ct. 1712. In making out a prima facie case the defendant must show that he is a member of a cognizable racial group, and that the prosecutor has used peremptory challenges to remove from the venire members of the defendant's race. Id. at 96, 106 S.Ct. 1712. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. Id. The trial court should look at all relevant factors in determining whether a prima facie case has been presented. See id. If the trial judge determines that a prima facie case has been made, the burden then shifts to the State to produce a *444 race-neutral explanation for striking the questioned veniremen. Id. at 97, 106 S.Ct. 1712.
¶ 9. In the case sub judice, the trial judge determined that the defendant had not made a prima facie case under Batson, as to the number of African-Americans in the jury pool. We agree. Wilks argues that Batson requires the venire persons to accurately represent the racial make-up of the county. He asserts that out of the fifty venire persons present to participate in the jury selection process only four were African-American. Thus, the African-American venire persons represented a mere eight percent of the total pool, whereas the percentage of eligible African-Americans in Lamar County is several times that number.
¶ 10. While Batson does interpret the Sixth Amendment to require that the jury will be selected from a pool of names representing a cross section of the community, the court has never interpreted that to require that juries must "mirror the community and reflect the various distinctive groups in the population." Id. at 86 n. 6, 106 S.Ct. 1712 (quoting Taylor v. Louisiana, 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975)). Here Wilks failed to provide sufficient proof to raise the requisite inference that a discriminatory practice was used in the selection of the venire persons. The trial judge found there was no systematic exclusion of jurors based on race. Absent indicia of prejudice or fraud in the method used by the clerk of the lower court in the selection of venire persons, this Court finds that the process was free from reversible error. See Griffin v. State, 494 So.2d 376, 379 (Miss.1986).

II. Weight and Sufficiency and Jury Instruction
¶ 11. At the conclusion of the State's case, Wilks moved for a directed verdict based on the assertion that the State failed to present sufficient evidence that he had sold or transferred cocaine. The trial judge denied Wilks's motion. Wilks proceeded to present evidence after the State rested its case. Such action waived his right to appeal that decision and bars this Court from reviewing the directed verdict issue at that juncture in the case. See Harris v. State, 576 So.2d 1262, 1263 (Miss.1991).
¶ 12. The waiver, however, in no way waives the right to challenge the sufficiency or weight of the evidence in the event of an adverse jury verdict. Wetz v. State, 503 So.2d 803, 807 n. 3 (Miss.1987). What the waiver rule means is that the defendant must proceed on the basis of the evidence before the court at the time the challenge is made and not in the limited state of the record which may have existed back when the motion for a directed verdict was originally made. Id.
¶ 13. Following the conclusion of the trial, Wilks moved for a JNOV or, in the alternative, a new trial. The trial judge denied this motion as well. In the motion, Wilks argued that the State relied primarily on the videotape as proof that he participated in the crime. The tape, Wilks asserts, "does not show the two exchanging money or crack cocaine." Wilks adds that the tape also does not show the exchange of a "tip," as testified to by Lewis. Thus, Wilks argues, the evidence presented was not sufficient to sustain a guilty verdict.
¶ 14. In reviewing this issue, this Court is guided by the well-settled standard set out in Pearson v. State, 428 So.2d 1361 (Miss.1983). Once a verdict of guilty is given in a criminal case we are not at liberty to reverse unless we conclude that based on the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant *445 was guilty. Id. at 1364. Furthermore, we will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence, that to allow it to stand, would be to sanction an unconscionable injustice. Id.
¶ 15. First, we shall address the reasonable juror standard by which we are bound in determining whether or not to reverse a jury verdict of guilty. In the case sub judice, Wilks points to the videotape as the hinge point of his argument that the verdict should be overturned. Wilks argues that the videotape was the crux of the State's argument. He argues that upon careful review of the videotape, no reasonable juror could conclude that a transaction of either crack or money had taken place. Due to the position of the camera, Wilks's hands are not visible, and thus one cannot discern what, if anything, was passed from Wilks to Lewis. Therefore, Wilks argues, the jury's verdict of guilty, which was based on this videotape, should be reversed.
¶ 16. While Wilks is correct in asserting that his hands are not visible in the videotape and that one is not able to conclude whether an illicit transaction took place, based solely on what can be seen on the tape, Wilks fails to take into account the corroborating evidence and the totality of the circumstances presented. Lewis testified that he had asked Wilks where Lewis could buy some crack and Wilks joined him in the car and took him to an area where he could purchase the crack. Once they arrived at their destination, Lewis indicated to Wilks that Lewis wanted to purchase a "thirty" which, according to Lewis, meant he wanted thirty dollars worth of crack cocaine. Lewis then testified that Wilks left the vehicle and entered a house. When he returned he handed Lewis "two off-colored white rocks."
¶ 17. Wilks points this court to inconsistencies in Lewis's testimony and the uncorroborating effect of the videotape. More specifically, Wilks asserts that the tape does not depict the transaction between Wilks and Lewis of the crack and the thirty dollars used to pay for it. He also argues that the tape does not depict the second transaction that Lewis testified aboutthat he gave Wilks a "two or three dollar tip." After careful review of the videotape, this Court agrees that the positioning of the video apparatus does not allow the viewer to see enough of either transaction to determine whether crack was transferred from Wilks to Lewis. However, this fact alone does not lessen the effect of Lewis's testimony explicitly describing the illicit transaction. Although Lewis is a confidential informant working for the State, with inherent biases, and has a prior conviction of uttering forgery, his credibility as a witness falls outside of the circumference of our review. See Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983). Indeed these are all impeachable facts and can be used by the jury in weighing the evidence, but this is left solely to the jury and is not reviewable by this Court. See id.
¶ 18. It is our judgment that a reasonable juror, with the evidence presented by Lewis, along with the crime lab results confirming the fact that the substance was crack cocaine, could find Wilks guilty of the sale of crack cocaine. Even without the videotape, we do not find it unreasonable for a juror to find Wilks guilty. Thus, we find that the trial judge did not err in denying Wilks's motion for a JNOV and in refusing to grant instruction D-1 which was Wilks's request for a peremptory instruction.
¶ 19. Wilks's alternative request for a new trial requires review under another well-settled standard. This Court *446 will only order a new trial when it determines that the verdict is contrary to the overwhelming weight of the evidence, so that to allow the conviction to stand would sanction an unconscionable injustice. Pearson, 428 So.2d at 1364. Again, Wilks bases this argument on lack of visibility as to what transpired and lack of conclusiveness as to what is shown on the videotape. We have considered the argument and find that the verdict is not contrary to the overwhelming weight of the evidence. While the videotape may not be conclusive proof as to what transaction took place, it certainly is not contrary to the State's case, which was corroborated by Lewis's testimony. Finally, allowing the verdict of guilty to stand would not sanction an unconscionable injustice. Accordingly, the trial judge did not abuse his discretion in denying Wilks's motion for a new trial. We affirm the decision of the trial court in all particulars.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY OF CONVICTION OF SALE OR TRANSFER OF A CONTROLLED SUBSTANCE AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT THE ELIGIBILITY OF PAROLE, PROBATION, OR EARLY WORK RELEASE AND CONFINEMENT TO MAXIMUM SECURITY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAMAR COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, MYERS and CHANDLER, JJ., concur.