# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00355-COA

NATHANIEL COOPER A/K/A NATHANIEL U.        APPELLANT
COOPER A/K/A NATHANIEL URAIL COOPER

v.

STATE OF MISSISSIPPI        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/09/2014 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS JON-WILLIAM BELLINDER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, DOG FIGHTING, AND COUNT II, CONSPIRACY TO FIGHT DOGS, AND SENTENCED AS A HABITUAL OFFENDER TO THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ON COUNT I AND FIVE YEARS ON COUNT II, WITH THE SENTENCES TO RUN CONSECUTIVELY |
| DISPOSITION: | AFFIRMED - 08/16/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., CARLTON, AND FAIR, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. A Rankin County jury convicted Nathaniel Cooper of dog fighting and conspiracy to fight dogs, and the trial court sentenced Cooper as a habitual offender to serve three years for the dog-fighting conviction and five years for conspiracy-to-fight-dogs conviction, with

the sentences to run consecutively to each other. Cooper filed a motion for a judgment notwithstanding the verdict (JNOV) and a motion for a new trial, both of which the trial court denied.

¶2. Cooper now appeals, asserting the following assignments of error: (1) the trial court abused its discretion in refusing to grant a proffered circumstantial-evidence instruction; (2) the trial court improperly excluded certain jurors and impeded public access to voir dire; (3) prosecutorial misconduct violated Cooper's due-process rights and his right to a fair trial; (4) the trial court erred in allowing the State to introduce extrinsic evidence; (5) the trial court erred in failing to grant a mistrial; and (6) the evidence was insufficient to sustain a guilty verdict. Finding no error, we affirm Cooper's conviction and sentence.

**FACTS**

¶3. A Rankin County grand jury indicted Cooper for dog fighting, in violation of Mississippi Code Annotated section 97-41-19 (Rev. 2014), and conspiracy to fight dogs, in violation of Mississippi Code Annotated section 97-1-1 (Rev. 2014). The State amended Cooper's indictment prior to trial to reflect his habitual-offender status pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2015).

¶4. A trial was held on December 8, 2014. The jury heard testimony from Officers Trey Peeples, Fred Lovett, James Rutland, and Ken Sullivan of the Rankin County Sheriff's Department; Lance Cooper of the Rankin County Tax Assessor's Office; Dr. Richard Kirby, an expert in the field of veterinary medicine; and Domingo Deering, who was co-indicted with Cooper on the charges of dog fighting and conspiracy to fight dogs.

2

¶5.     Officer Lovett, an intelligence analyst at the Rankin County Sheriff's Department, testified that on January 11, 2014, he responded to a 911 call reporting dog fighting at 141 Bee Summers Road in Rankin County.  Officer Lovett arrived at the scene approximately seventeen minutes after receiving the call.  He observed approximately eighteen cars at the address.  Officer Lovett stated that when he stopped in the middle of the road at the scene, he observed two people with flashlights and two pit bulls "[take] off through the weeds."  Officer Lovett pulled into the driveway, where he observed a male standing in the front yard close to the residence.  Officer Lovett testified that when he exited his vehicle, the man "took off running."  Officer Lovett then observed "people dragging dogs through the woods" and "people running out of the woods [and] running across the street."  Officer Lovett testified that Cooper, the homeowner, and his brother, Kyre Cooper, eventually approached him and asked him why he was on the premises.  Officer Lovett stated that Cooper assured him that he did not have any pit bulls at the house, and that no dog fighting occurred on the premises.  Officer Lovett testified that despite these assurances, Kyre later brought out a pit bull from inside the house and showed it to him, explaining that the pit bull was only a pet.

¶6.     Officer Sullivan, the sergeant over animal control at the Rankin County Sheriff's Department, testified that when he arrived on the scene on January 11, 2014, he observed that the front yard of Cooper's residence "was just full of vehicles, cars, [and] trucks."  At that time, officers from the sheriff's department were still in the process of securing the scene, so Officer Sullivan stated that he "walked to the back of the property and saw a dog fighting pit[,]" which he described as a square structure with blood-stained carpet inside.  Officer

Sullivan also observed several items around the pit, including a bucket with fresh water, a brand new box of baking soda, a brand new bottle of Dawn dishwashing liquid, measuring tape, a post-hole digger, two lights, and a plastic bag containing "ice cold beer."

¶7. After the officers obtained a search warrant for the entire property, Officer Sullivan proceeded to search the property. During the search, Officer Sullivan discovered posts in the ground near the dog-fighting pit with ropes and cables attached to them, "where you could tie dogs up." Near a chain-link dog pen, he also observed a digital scale hanging from a tree with a cord dangling off the scale. Officer Sullivan explained that "before you fight dogs, you have to weigh them . . . to make sure they're evenly matched."

¶8. Inside Cooper's residence, Officer Sullivan found two pit bulls. He also found a bottle of injectable B-12 vitamin marked "for animal use only" inside of the refrigerator. Officer Sullivan testified that "it's common to find [vitamin B-12] at dog fighting operations."

¶9. Officer Sullivan explained at trial that a single-wide trailer was located behind Cooper's residence, and the single-wide trailer contained another bottle of B-12 injectable vitamins, and a paper sack full of syringes, dog chew treats, and dog toys. Officer Sullivan testified that in the back of the trailer, he observed "a treadmill that had boards that would hold a dog on the treadmill for . . . exercising a dog." Another room in the trailer "was covered in dog feces like [Cooper] had been housing dogs" in the room.

¶10. Officer Sullivan stated that twenty-four cars, trucks, and SUVs were on the property on the night of January 11, 2014. Officer Sullivan testified that after searching the vehicles,

4

the sheriff's department recovered plastic dog crates "like you would put a dog in to transport a dog," three-inch-thick heavy collars, three-foot heavy lead ropes "like you would lead a dog with," and a break stick, which Officer Sullivan explained "is something you use if a pit bull grabs onto another dog and won't release it." Officer Sullivan stated that two more pit bulls were eventually discovered on the property.

¶11. The defense objected to numerous statements by Officer Sullivan on the grounds that the State repeatedly tried to inappropriately elicit expert opinion testimony from Officer Sullivan. The record reflects that the trial court sustained the defense's objections to this testimonial evidence.

¶12. Dr. Kirby, the State's proffered expert in veterinary medicine, testified that he examined one of Cooper's pit bulls a few days after officers removed the pit bull from Cooper's residence. While the dog was at the veterinary clinic, Dr. Kirby observed that the dog had mutilated himself by aggressively attacking the cage in an attempt to get through the cage to another dog. Dr. Kirby stated that interspecies aggression is more of a learned behavior than a genetic behavior, and he opined that based on that dog's aggressive behavior toward other dogs, the dog had been taught to fight.

¶13. The jury also heard an audio tape of a jailhouse phone call between Cooper and his brother, Kyre, wherein Cooper asked Kyre how the sheriff's department discovered that Deering owned the dogs. The jury heard Cooper tell Kyre, "you just made a case against me[;] . . . you just prosecuted me," explaining "that's going to let them know they was coming to my house with the intention to do that."

5

¶14. At the close of the State's case, the defense moved for a directed verdict, which the trial court denied. The defense called only one witness, Deering. Deering testified that he was at the property at 141 Bee Summers Road on January 11, 2014, to "fight a dog." Deering also testified that he pled guilty to one count of dog fighting and one count of conspiracy to commit dog fights by transporting or training a dog to fight. Deering explained that these charges stemmed from the incident at Cooper's residence on January 11, 2014. Deering testified that although he swore under oath that he conspired with Cooper to fight dogs, he actually conspired with Kyre, not Cooper, on the dog-fighting charge. In his testimony, Deering claimed that he only stated that he conspired with Cooper because the Rankin County Sheriff's Department made him name Cooper as his coconspirator.

¶15. Out of the presence of the jury, the trial court ruled that "it appears . . . [that Deering's] testimony is materially different than what [it] was at his guilty plea, which would seem to me to give rise to a possible charge for perjury." The trial court ordered that Deering be taken into custody, but clarified that "he needs to be taken out this door to make sure the jury doesn't see him," and ordered that "there will be no mention of this in front of the jury."

¶16. The jury ultimately found Cooper guilty on both counts, and the trial court sentenced Cooper to serve three years for the dog-fighting conviction and five years for the conspiracy-to-fight-dogs conviction, with the sentences to run consecutively to each other. The trial court also ordered Cooper to pay court costs, fees, and assessments in the amount of $921.50 plus a $5,000 fine for the dog-fighting conviction and a $5,000 fine for the conspiracy-to-fight-dogs conviction. After the trial court denied Cooper's posttrial motions, Cooper

appealed.

## STANDARD OF REVIEW

¶17. When reviewing the legal sufficiency of the evidence on appeal, this Court "views the evidence in the light most favorable to the prosecution and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Taylor v. State*, 179 So. 3d 1237, 1241 (¶14) (Miss. Ct. App. 2015). "[O]nly if we find the evidence . . . points so overwhelmingly in favor of the defendant that reasonable jurors could not have found beyond a reasonable doubt that the defendant was guilty" will we reverse a conviction. *Id*.

¶18. We review the refusal of jury instructions for an abuse of discretion. *Victory v. State*, 83 So. 3d 370, 373 (¶12) (Miss. 2012). Additionally, we review "the jury instructions as a whole to determine whether an error has occurred." *Id*. We also acknowledge that we review jury-selection statutes for substantial compliance. *See Griffin v. State*, 494 So. 2d 376, 379 (Miss. 1986); *Moore v. State*, 816 So. 2d 1022, 1026 (¶10) (Miss. Ct. App. 2002); *see also* Miss. Code Ann. § 13-5-87 (Rev. 2012). The statutory provision "relating to the listing, drawing, summoning, and impaneling of juries [is] said to be directory merely." *Arnold v. State*, 171 Miss. 164, 157 So. 247, 248 (1934); *see also Thomas v. State*, 818 So. 2d 335, 340 (¶¶7-8) (Miss. 2002).

¶19. Furthermore, "[o]ur well-established standard of review for . . . the trial court's [admission] of evidence, including expert testimony, is abuse of discretion." *Jones v. State*, 918 So. 2d 1220, 1223 (¶9) (Miss. 2005). The supreme court has explained that "[u]nless

we can safely say that the trial court abused its judicial discretion in allowing or disallowing evidence so as to prejudice . . . the accused in a criminal case, we will affirm the trial court's ruling." *Id*.

## DISCUSSION

### I.     Circumstantial-Evidence Jury Instruction

¶20.    Cooper argues that in order to secure a conviction for dog fighting or conspiracy to fight dogs, the law required the State to prove that Cooper sponsored a dog fight, promoted a dog fight, staged a dog fight, conducted a dog fight, owned a dog with the intent to participate in a dog fight, trained a dog with the intent to participate in a dog fight, or transported a dog with the intent to participate in a dog fight, pursuant to section 97-41-19.[1] Cooper maintains that the State failed to provide direct evidence on any of these elements at trial. Cooper therefore asserts that the State's case relied solely on circumstantial evidence and that the trial court erred in denying his proffers for circumstantial-evidence instructions.

¶21.    The record reflects that Cooper's counsel offered three instructions dependent on the case being sent to the jury as a circumstantial-evidence case:

> D-11: The Court instructs the jury that "circumstantial evidence" is defined as evidence which without going directly to prove the existence of a fact, gives rise to an inference that such a fact exists. Circumstantial evidence is presented where there are no eyewitnesses to a crime nor a confession made by the defendant.
>
> . . . .
>
> D-12: The Court instructs the Jury that if the State has relied on circumstantial

---

[1] Cooper was indicted for violations of Mississippi Code Annotated sections 97-1-1 and 97-41-19.

8

evidence to establish its theory of guilty of the defendant, Nathaniel Cooper, then the evidence for the State must be so strong as to establish the guilt of Nathaniel Cooper, beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence.

. . . .

D-16: The Court instructs the Jury that if there be any fact or circumstances in this case susceptible to two interpretations, one favorable and the other unfavorable to Nathaniel Cooper, and when the jury has considered such fact or circumstance with all the other evidence, there is a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence, the jury must resolve such doubt in favor of Nathaniel Cooper, and place upon such fact or circumstance the interpretation favorable to Nathaniel Cooper.

The State objected to these jury instructions as improper on the basis that the State's evidence and case were not wholly circumstantial. The transcript reflects that the trial court agreed with the State, and the trial court then refused these instructions.

¶22. In *Goff v. State*, 14 So. 3d 625, 660 (¶151) (Miss. 2009), the supreme court stated "in matters where the case is based on 'purely' circumstantial evidence," the court has held that "the defendant is entitled to a two-theory instruction, as well as the general circumstantial-evidence instruction." A two-theory instruction instructs the jury

that if there may be a fact or circumstance . . . susceptible of two interpretations, one favorable and the other unfavorable to the [d]efendant, and when the jury has considered such fact or circumstance with all other evidence, there is a reasonable doubt as to the correct interpretation, then . . . the jury[] must resolve such doubt in favor of the [d]efendant, and place upon such fact or circumstance the interpretation most favorable to the [d]efendant.

*Id*. at (¶149). However, the supreme court clarified that "[i]t is only in entirely circumstantial evidence cases that such an instruction is required." *State v. Rogers*, 847 So. 2d 858, 863 (¶21) (Miss. 2003). The *Rogers* court explained that "[a] circumstantial evidence case (for

9

the purposes of granting a 'two-theory' instruction) is one in which there is neither an eyewitness nor a confession to the crime." *Id*. at (¶22). In *Haynes v. State*, 744 So. 2d 751, 753 (¶8) (Miss. 1999), the supreme court held that video evidence submitted to the jury showing the accused "committing unlawful acts . . . constitutes direct, rather than circumstantial[,] evidence of a crime."

¶23. The trial court refused Cooper's requested instructions that were applicable to an entirely circumstantial-evidence case because the trial court found that the State's evidence included direct evidence of guilt. Here, as acknowledged by the trial court, the record shows that the jury heard an audio tape of a jailhouse phone call between Cooper and his brother, Kyre. During the phone call, Cooper asked Kyre if he told the police that the dogs belonged to Deering. The record reflects that Kyre admitted that he did, and Cooper asked Kyre why he did that, adding "you just made a case against me[;] . . . you just prosecuted me." The record further shows that Cooper told Kyre "that's going to let them know they was coming to my house with the intention to do that." The State also submitted numerous photographs showing physical evidence found at the Cooper's residence to support its argument that Cooper was involved in dog fighting. Based on the evidence presented at trial, the trial court denied the defense's request for a circumstantial-evidence instruction on the basis that the phone-call recordings of Cooper constituted admissions and direct evidence of the crimes charged. The Mississippi Supreme Court has established that "examples of direct evidence include an admission or confession by the defendant to a significant element of the offense, or eyewitness testimony to the gravamen of the offense charged." *States v. State*, 88 So. 3d

10

749, 756-57 (¶¶27, 34) (Miss. 2012) (internal quotation marks omitted). In this case, Cooper's recorded conversation and statements, like in *States*, constitute "a statement by the accused, direct or implied, of facts pertinent to the issue, and tending, in connection with other facts, to prove his guilt." *Id*. at (¶28). The evidence in the record supports the trial court's finding that the State's evidence included direct evidence of Cooper's guilt, and as a result, we find no abuse of discretion in the trial court's refusal of the circumstantial-evidence instruction since the evidence in the record supports this ruling by the trial court. *See Victory*, 83 So. 3d at 373 (¶12).

## II.      Voir Dire

¶24.    Cooper next argues that the trial court erroneously allowed for the exclusion of at least two black male jurors who reported for jury duty. Cooper maintains that his counsel should have been allowed to choose a jury from the entire venire summoned for that day, not just the selected few who showed up at a certain time. Cooper alleges that this exclusion of two potential jurors prejudiced his right to a fair and public trial.

¶25.    We recognize that "[t]he selection and empaneling of a jury is strictly a judicial function." *Moore*, 816 So. 2d at 1026 (¶10) (citing *Butler v. State*, 241 So. 2d 832, 835 (Miss. 1970)). Upon review, this Court gives a "substantial degree of deference . . . to the [trial court] in determining its procedures for empaneling a jury, limited only by statutory guidelines." *Id*.; *see* Miss. Code Ann. § 13-5-87. On appeal, when reviewing a jury-selection issue, we acknowledge that "substantial compliance with [section 13-5-87] will not warrant the quashing of the venire. . . . [A] jury panel should not be quashed unless the

11

defendant can show that the failure to comply with the statute amounts to actual fraud, prejudice, or such a flagrant violation of duty as to amount to fraud." *Moore*, 816 So. 2d at1026 (¶10) (internal quotation marks and citations excluded) (citing *Pulliam v. State*, 515 So. 2d 945, 948 (Miss. 1987); *Griffin v. State*, 494 So. 2d 376, 379 (Miss. 1986); *Harris v. State*, 406 So. 2d 823, 824 (Miss. 1981)).

¶26. The transcript reflects that the defense informed the trial judge that the bailiff turned away several people who the defense assumed arrived late for jury duty. The defense explained that the people arrived to the courtroom after the appointed time, 8:30 a.m., and that the bailiff informed them that they could not enter after 8:30 a.m. The defense explained that a video had already begun to play for those jurors arriving on time for their jury duty. The defense then proceeded to make an ore tenus motion arguing that as a result of this exclusion, Cooper could not receive a fair trial. However, the defense counsel admitted that he was not sure whether all of these people were arriving for voir dire or whether they were at the court for other matters.

¶27. The trial judge denied the motion, explaining that "it appears to me . . . that was not as a result of any scheme or plan to impinge on [Cooper's] right to a fair trial before an impartial jury." The trial court also stated that it would be "pure speculation on my part as to whether or not those individuals would have made it into the venire or been excused for other reasons." The trial judge then instructed the bailiff to make sure that this did not happen in the future.

¶28. With respect to the defense's assertion of a violation of the right to a public trial, in

*Young v. State*, 352 So. 2d 815, 818 (Miss. 1977), the supreme court held "that exclusion of one person from the courtroom does not violate the right of the defendant [to] a public trial as guaranteed by Section 26 of our Constitution and the Sixth Amendment to the United States Constitution." The supreme court has also explained that "[t]he term 'public trial' contemplated by our Federal and State Constitutions is a trial which is not secret and one that the public is free to attend. To a great extent it is a relative term and its meaning depends largely on the circumstances of each particular case." *Norwood v. State*, 258 So. 2d 756, 763 (Miss. 1972). The record reflects no evidence of excluding the public from attending the trial in this case.

¶29.    Regarding the exclusion of jurors in the present case, we must examine whether Cooper was prejudiced by the discharge of jurors by court personnel due to their late arrival. *See generally Griffin v. State*, 494 So. 2d 376, 379 (Miss. 1986); *Parker v. State*, 201 Miss. 579, 585-88, 29 So. 2d 910, 912-14 (1947). The record reflects no intentional or systematic exclusion of potential jurors or any exclusion of potential jurors based on any status or category. Rather, this case reflects the turning away of those reporting late for jury duty. We acknowledge the Mississippi Supreme Court found in *Page v. Siemens Energy & Automation Inc.*, 728 So. 2d 1075, 1080 (¶17) (Miss. 1998), that a defendant's constitutional right to a fair trial was violated where the circuit clerk intentionally and systematically excluded potential jurors "who had been summoned to jury duty in either circuit or county courts within the preceding two years, whether they actually had served or not." The *Page* court further recognized its prior holding that a defendant's right to a fair trial was violated where

13

the circuit clerk "unilaterally struck from the jury list all persons over the age of sixty-five as well as all of those persons who had served on a jury within the preceding two years." *Id.* at (¶19); *see Adams v. State*, 537 So. 2d 891, 893-94 (Miss. 1989).

¶30.    The record in this case shows no evidence of the intentional or systematic exclusion of potential jurors based upon any particular status.  The record also shows that the bailiff discharged any person arriving for jury duty later than 8:30 a.m., and the defense counsel admitted that he was not sure whether all of these people were arriving for voir dire or whether they were at the court for other matters.  *See Page,* 728 So. 2d at 1080 (¶19).

¶31.    After our review, we find no evidence that Cooper's right to a fair trial was violated by the trial court's inadvertent exclusion of two potential venire members from voir dire because the bailiff turned them away based on their late arrival to the courtroom, nor do we find any prejudice against Cooper.  This issue lacks merit.

### III.    Objections to Testimonial Evidence

¶32.    Cooper asserts that the State repeatedly violated the trial court's pretrial order regarding the opinion testimony of Officer Sullivan.  At trial, the State called Officer Sullivan, the sergeant over animal control for the Rankin County Sheriff's Department, to testify regarding the incident on January 11, 2014.  Officer Sullivan testified that he had worked on dog-fighting cases before, and he had experience in assisting the FBI with dog-fighting raids.  Cooper claims that despite the trial court's ultimate ruling that Officer Sullivan would not be allowed to give any expert opinions, the State continuously attempted to elicit opinion testimony.  Cooper maintains that as a result of this violation of the trial

court's orders, the State elicited improper opinion testimony and improper testimony regarding excluded evidence, thus prejudicing Cooper. "When reviewing the trial court's decision to allow or disallow evidence, including expert testimony, we are bound by an abuse of discretion standard of review." *Webb v. Braswell*, 930 So. 2d 387, 396-97 (¶15) (Miss. 2006).

¶33. During direct examination, the State established that Officer Sullivan arrived at the scene after the initial responding officer. The State then asked Officer Sullivan to identify objects in various photographs admitted into evidence that Officer Sullivan had personally seen upon his arrival and inspection of the crime scene. Officer Sullivan affirmed under oath that each of the individual photographs admitted into evidence and shown to him at trial for identification purposes constituted a true and accurate representation of what he saw at the crime scene on the evening of January 11, 2014. The record reflects that Officer Sullivan identified the pit that he had observed in Cooper's yard and described it as a dog-fighting pit. The transcript shows that Officer Sullivan stated the following when identifying various objects in the photograph for the jury, which he observed during his investigation of the crime scene: the "wall of the fighting pit" constructed of heavy wood and tin, a dog house inside of the pit, and a piece of carpet inside of the pit that "appear[ed]" to have blood on it. Officer Sullivan also identified other items and various pieces of paraphernalia that he saw upon his arrival and inspection of the residence and the trailer behind the residence. As stated, Officer Sullivan testified that he observed a bucket with fresh water, a brand new box of baking soda, a brand new bottle of Dawn dishwashing liquid, a measuring tape, a post-

15

hole digger, two lights, and a plastic bag containing "ice cold beer" around the wall of the pit. Officer Sullivan also discovered posts in the ground near the pit with ropes and cables attached to them, "where you could tie dogs up." Officer Sullivan testified that near a chain-link dog pen, he observed a digital scale hanging from a tree with a cord dangling off the scale.

¶34. Inside Cooper's residence, Officer Sullivan testified that he found two pit bulls. He also found a bottle of injectable B-12 vitamin marked "for animal use only" inside of the refrigerator. Officer Sullivan testified that "it's common to find [vitamin B-12] at dog fighting operations." Officer Sullivan explained at trial that a single-wide trailer was located behind Cooper's residence, and the single-wide trailer contained another bottle of B-12 injectable vitamins, as well as a paper sack full of syringes, dog chew treats, and dog toys. Officer Sullivan testified that in the back of the trailer, he observed "a treadmill that had boards that would hold a dog on the treadmill for . . . exercising a dog." Another room in the trailer "was covered in dog feces like [Cooper] had been housing dogs" in the room.

¶35. Officer Sullivan also identified a stick recovered from one of the vehicles, and admitted into evidence, as a "break stick," which he explained is owned only by people who have pit bulls, and the stick is used to break the pit bulls' jaws apart.

¶36. During his testimony, Officer Sullivan identified these items as commonly found at dog-fighting operations. Cooper argues that the ultimate issue of whether the dog pen in the present case constituted a fighting pit was for the jury to decide.

¶37. The State argues, and the record reflects, that the trial court sustained Cooper's

16

objections to any of Officer Sullivan's testimony that constituted expert-opinion testimony.[2]

In his appellate brief, Cooper agrees that the trial court "ruled on multiple occasions that

Officer Ken Sullivan would not be allowed to give any expert opinions." The record reflects

that the trial court also instructed the jury to disregard certain statements made by Officer

Sullivan. Upon review of this issue, we recognize that

> [w]here a trial judge sustains an objection to testimony interposed by the defense in a criminal case and instructs the jury to disregard it, the remedial acts of the court are usually deemed sufficient to remove any prejudicial effect from the minds of the jurors. The jury is presumed to have followed the directions of the trial judge.

*Alford v. State*, 760 So. 2d 48, 55 (¶24) (Miss. Ct. App. 2000) (citing *Walker v. State*, 671

So. 2d 581, 621 (Miss. 1995)). Our review of the record reveals no unfair prejudice to

Cooper resulting from Officer Sullivan's testimony and the evidence presented during his

testimony.

### IV. *Brady* Violation

¶38. Cooper argues that the State improperly withheld critical exculpatory information and

evidence from the defense. Cooper claims that as a result of these violations, his due-process

rights, as acknowledged under *Brady v. Maryland*, 373 U.S. 83, 86 (1963), were violated.

In *Brady,* the United States Supreme Court held that where a prosecutor fails to disclose

favorable evidence material either to guilt or punishment, a violation of a defendant's due

process may result. *Id.* "A *Brady* violation occurs where the record shows the existence of

---

[2] *See also United States v. Akins*, 746 F.3d 590, 598-600 (5th Cir. 2014) (finding no error in a police officer's lay testimony concerning the meaning of drug slang and code words used by conspirators on wiretapped recordings).

evidence that 1) is favorable to the accused or impeaching of a state's witness, 2) was suppressed either willfully or inadvertently by the prosecution, and 3) is material to the accused's defense." *Keller v. State*, 138 So. 3d 817, 840 (¶35) (Miss. 2014) (internal quotation marks omitted).

¶39. Cooper claims that the State failed to provide to him with the entirety of the indictments, charges, and plea agreements of the coconspirators and others who gave statements and testimony against him. Cooper specifically alleges that the State failed to disclose Benjamin Nelson Williams's name to the defense, nor any indictment or plea agreement relative to Williams. Cooper maintains that such an omission violated his due-process rights.

¶40. "It is well established that the State has a duty to turn over all exculpatory material relevant to a defendant's case." *Minor v. State*, 89 So. 3d 710, 714 (¶9) (Miss. Ct. App. 2012) (citing *Howell v. State*, 989 So. 2d 372, 378 (¶13) (Miss. 2008)). However, the transcript before us reflects that Williams was not a witness at trial. The transcript also reflects that Cooper's counsel admitted: "[O]ur understanding is that [Williams] has not been indicted." The trial court ultimately held that "the fact there were other individuals . . . who could have been and who may have been charged with a crime is not relevant in relation to [Cooper's] case." We find that Cooper failed to show any suppression by the State of any favorable evidence material either to Cooper's guilt or punishment. Thus, we find his *Brady* claim fails. *See Howell*, 989 So. 2d at 379 (¶¶15-16); *Minor*, 89 So. 3d at 714 (¶¶11-12).

18

¶41.    Cooper also maintains that the trial court failed to remedy the coercive interrogation practices of the Rankin County Sheriff's Department.  Prior to trial, Cooper filed a motion to strike testimony and to request for a remedy for coercive interrogation practices as to four of the State's witnesses:  Kyre Cooper, Domingo Deering, John Henry Parhm, and Brandy Pittman.  Cooper asserts that these four witnesses "should have been excluded from testifying" since the sheriff's department utilized coercive interrogation practices when interviewing the witnesses, thus corrupting their testimony.

¶42.    Upon review of his claim of coercive interrogation practices, we acknowledge: "In order to prove a due-process violation, the defendant must demonstrate: (1) that a witness for the State testified falsely; (2) that such testimony was material; and (3) that the prosecution knew that the testimony was false." *Thomas v. State*, 45 So. 3d 1217, 1222 (¶21) (Miss. Ct. App. 2010); *see also Giglio v. United States*, 405 U.S. 150, 153-54 (1972)).  Cooper claims that his attorney informed the trial judge prior to trial that when an investigator from the sheriff's department interviewed Cooper's brother, Kyre, the investigator showed Kyre a picture of his girlfriend crying and told Kyre "if he didn't tell him what he wanted to hear, that he was going to lock his girl up[,]" explaining that Kyre "was particularly afraid of this, because his girl is a school teacher."  Cooper also argued that the investigators coerced Deering through threats into implicating Cooper in the dog-fighting charges, despite Deering allegedly denying Cooper's involvement.  Cooper claimed that during Parhm's interview, Parhm expressed his fear resulting from "so many guys in the room talking to me so bad."  Cooper also stated that Pittman claimed that the sheriff's deputies "told her that if she did not

19

sign [the statement presented to her and produced by the State], then they would take her children away from her through [the Mississippi Department of Human Services], that she would be arrested[,] and [that she would] lose her job[.]"

¶43.    In addressing Cooper's claims of coercive interrogations, the trial court, after hearing arguments from the State and Cooper's counsel, ultimately held that Parhm would be prohibited from testifying as to any hearsay statements, and held that defense counsel could impeach Parhm on subsequent statements provided that were not hearsay.  However, the record reflects that the State never called Parhm to testify at trial.  The record also reflects that the trial court also found that based on the pretrial arguments presented, Kyre's statement "doesn't get to the point of being coerced" although Kyre admitted "he was scared."  The record also reflects that the State never called Kyre to testify at trial, and the jury only heard a jailhouse phone call between Cooper and Kyre.  The trial court further held that the defense could impeach Deering relative to his testimony he had provided previously in his guilty plea. The trial court acknowledged that the State expressed that Pittman would not be called to testify at trial.  The trial court additionally ruled that the defense's motion to strike was not timely raised pursuant to the motion deadline provided in discovery.

¶44.    The record shows that out of the four witnesses identified in Cooper's motion, only Deering testified at trial.  The record further reflects that the trial court allowed defense counsel to impeach Deering relative to the testimony in his guilty plea wherein he named Cooper as his coconspirator.  The jury heard testimony from Deering asserting that although he swore under oath that he conspired with Cooper to fight dogs, he actually conspired with

20

Kyre, not Cooper, on the dog-fighting charge. During his testimony, Deering claimed that he only stated that he conspired with Cooper because the Rankin County Sheriff's Department made him name Cooper as his coconspirator.

¶45. After our review, we find no abuse of discretion by the trial court in the admission of Deering's testimony. *See Jones*, 918 So. 2d at 1223 (¶9). The record therefore fails to support Cooper's allegations that his due-process rights were violated as a result of Deering's testimony. This argument is without merit.

## V. Extrinsic Evidence

¶46. Cooper alleges that the trial court erroneously allowed the State to introduce extrinsic evidence and testimony of other crimes, wrongs, or acts; specifically, a "break stick" found by the responding officers in another defendant's vehicle parked at his residence. Cooper maintains that admitting testimony of other crimes, wrongs, or acts into evidence was improper because when the evidence was admitted at trial, this evidence rebutted no character trait offered by Cooper. Cooper thus claims that this evidence constituted improper character evidence under Mississippi Rule of Evidence 404(a) and 404(b). However, Cooper's argument fails to address the fact that the evidence was found at the scene and constituted evidence used to commit and facilitate the crime of dog fighting.

¶47. During the trial, Officer Sullivan testified as to items actually found on Cooper's property during his search of the scene, including a break stick, leashes, collars, a dog-fighting pit, a treadmill, vitamin B-12 injectables, and a scale.[3] The record reflects that at

---

[3] As stated, the record reflects that Officer Sullivan identified the pit that he had observed in Cooper's yard and described it as a dog-fighting pit. The transcript shows that

trial, Cooper objected to Officer Sullivan's testimony regarding the items of evidence found on Cooper's property, specifically a "break stick" found inside of someone else's vehicle. The State argued that the testimony and evidence was relevant to the argument that Cooper sponsored and promoted a dog fight on his property on the evening of January 11, 2014. In support of its position, the State also argued that all of the items described were found at the scene at Cooper's residence. The trial court overruled the objection. On appeal, we review the admission and exclusion of evidence for an abuse of discretion. *See Jones*, 918 So. 2d at 1223 (¶9).

¶48.    Mississippi Rule of Evidence 401 defines relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. Mississippi Rule of Evidence 402 provides: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules. Evidence which is not relevant is not admissible." M.R.E. 402. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" M.R.E. 403. As stated, a trial court's admission or exclusion of evidence is reviewed for abuse of discretion. *Smith v. State*, 136 So. 3d 424, 431 (¶17) (Miss. 2014).

¶49.    The State argues that these items constituted relevant admissible evidence of the

Officer Sullivan identified various objects in the photograph for the jury, which he explained that he observed during his investigation of the crime scene: the "wall of the fighting pit" constructed of heavy wood and tin, a dog house inside of the pit, and a piece of carpet inside of the pit that "appear[ed]" to have blood on it.

22

crimes charged. In *32 Pit Bulldogs & Other Prop. v. Cty. of Prentiss*, 808 So. 2d 971, 972 n.1 (Miss. 2002), the supreme court recognized that items such as "a treadmill, 2 sets of weighing scales, various dietary supplements and medications, and 3 wooden 'break' sticks" constituted "items indicative of dog fighting."[4]

¶50. In applying the broad discretion provided to our trial courts when reviewing evidentiary determinations and precedent to the facts of this case, we find no abuse of discretion by the trial court in the admission of this evidence. *See Jones,* 920 So. 2d at 475-76 (¶¶33-34). This issue is without merit.

### VI. Perjury by Codefendant

¶51. Cooper argues that on the second day of trial, Deering was arrested on the stand and charged with perjury, prejudicing Cooper's right to a fair trial. Cooper maintains that as a result, the trial court should have either granted (1) a mistrial, or (2) a dismissal of the indictment.

¶52. We acknowledge that "[a]n arrest of a witness for perjury in the presence of the jury may constitute reversible error." *Roach v. State*, 7 So. 3d 911, 923 (¶25) (Miss. 2009); *see also Stephens v. State*, 592 So. 2d 990, 992 (Miss. 1991); *Brandon v. State*, 75 Miss. 904,

---

[4] In *Jones v. State*, 920 So. 2d 465, 476 (¶34) (Miss. 2006), the supreme court held:

> Though this Court certainly expects trial judges to have considered Rule 403 in making their evidentiary rulings, we certainly do not predicate the soundness of these determinations on the express use of magic words. . . . [O]ur review depends on the evidence and not the judge, and while a judge's on-the-record analysis is recommended as it serves to fortify the judge's position for purposes of review, the lack of such analysis is harmless unless we deem the evidence to be patently prejudicial.

906, 23 So. 517, 518 (1898). However, the record before us in this case reflects that Deering was not arrested on the stand in the presence of the jury. Instead, the trial court excused the jury temporarily and determined, out of the presence of the jury, that Deering indeed committed perjury and ordered that Deering be taken into custody. However, the trial court clarified that "he needs to be taken out this door to make sure the jury doesn't see him," and ordered that "there will be no mention of this in front of the jury."

¶53. Since the record fails to support Cooper's assertion that Deering was arrested in the presence of the jury, we find that no error occurred. This issue is without merit.

### VII. Sufficiency of the Evidence

¶54. Cooper argues that insufficient evidence existed to sustain the verdict of guilty of dog fighting or conspiracy to fight dogs. Cooper submits that the only physical evidence submitted against him was circumstantial, and that the State presented no actual evidence of Cooper having participated in dog fighting or having trained a dog to fight.

¶55. As stated, this Court "views the evidence in the light most favorable to the prosecution and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Taylor*, 179 So. 3d at 1241 (¶14). In applying this standard of review, we give the State the benefit of all favorable inferences reasonably drawn from the evidence. *Jones v. State*, 20 So. 3d 57, 64 (¶16) (Miss. Ct. App. 2009) (citing *Hughes v. State*, 983 So. 2d 270, 275-76 (¶¶10-11) (Miss. 2008)). "[O]nly if we find the evidence . . . points so overwhelmingly in favor of the defendant that reasonable jurors could not have found beyond a reasonable doubt that the defendant was guilty" will we reverse a

24

conviction. *Id.* We further recognize that the jury resolves matters of weight and credibility. *Day v. State*, 126 So. 3d 1011, 1014 (¶10) (Miss. Ct. App. 2013).

¶56. As discussed above, we have found no abuse of discretion in the trial court's refusal of the circumstantial-evidence instruction, finding no error in the trial court's determination that the State's case provided direct evidence of Cooper's guilt of the charged offenses. The trial court found that the State's evidence included a recording between Cooper and Kyre regarding the offenses charged. The record shows that the jury heard an audio recording of the jailhouse phone call between Cooper and Kyre wherein Cooper asked Kyre if he told the police that the dogs belonged to Deering. The recording reflects that Kyre admitted that he did, and Cooper asked Kyre why he did that, adding "you just made a case against me[;] . . . you just prosecuted me." Cooper told Kyre "that's going to let them know they was coming to my house with the intention to do that." The record also reflects numerous photographs showing physical evidence found at the Cooper's residence to support the State's argument that Cooper was involved in dog fighting. Additionally, the jury heard expert testimony from Dr. Kirby, the State's proffered expert in veterinary medicine, providing that one of Cooper's dogs had mutilated himself by aggressively attacking the cage in an attempt to get through the cage to another dog. Dr. Kirby stated that interspecies aggression is more of a learned behavior than a genetic behavior, and he opined that based on that dog's aggressive behavior towards other dogs, the dog had been taught to fight.

¶57. We find that the record shows that the State presented sufficient evidence at trial to

support Cooper's conviction.[5]  This issue lacks merit.

¶58.    **THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, DOG FIGHTING, AND SENTENCE AS A HABITUAL OFFENDER OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS; AND CONVICTION OF COUNT II, CONSPIRACY TO FIGHT DOGS, AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCES TO RUN CONSECUTIVELY, IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**

---

[5] *See Taylor*, 179 So. 3d at 1241 (¶14).