# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00719-COA

**MICHAEL RAY FONTAINE A/K/A MICHAEL FONTAINE**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

DATE OF JUDGMENT:            11/04/2011
TRIAL JUDGE:                 HON. ROBERT B. HELFRICH
COURT FROM WHICH APPEALED:   FORREST COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                             BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: JOSEPH SCOTT HEMLEBEN
DISTRICT ATTORNEY:           PATRICIA A. THOMAS BURCHELL
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 03/13/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

> EN BANC.

> GREENLEE, J., FOR THE COURT:

¶1.     On November 3, 2011, a jury in Forrest County Circuit Court found Michael Fontaine guilty of burglary of a nonresidential dwelling and conspiracy to commit burglary of a nonresidential dwelling. Fontaine appeals claiming (1) the circuit court erred by not allowing the full audio-recorded polygraph interview to be played when the State played a two-minute excerpt; (2) the circuit court erred in excluding the affidavit of a deceased co-defendant; (3) prosecutorial misconduct denied Fontaine a fair trial; (4) insufficient evidence supported the verdicts; and (5) the verdicts were against the overwhelming weight of the evidence. Finding

no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On June 23, 2010, Petal Police Department Officer Rick Varner responded to a burglary call at a local trailer park. Upon arrival, Officer Varner spoke with William Cooley, who explained that he and his wife were in the process of moving and that his trailer had been burglarized. William showed Officer Varner the window that the perpetrator used to enter his trailer and, at the request of Officer Varner, listed the items that were stolen: rods and reels, NASCAR collectibles, several CDs, DVDs, and bow and arrows.

¶3.     Petal Police Department Investigator Kevin Bullock was dispatched to further investigate the scene along with Officer Varner. The officers, receiving information that the stolen items might be in another trailer at the same park, walked over to that trailer, which was owned by Mark Walker. Arriving at the trailer, the officers were met by Walker, his girlfriend Aundrea McDaniel, and his co-worker Fontaine. After obtaining Walker's consent to search the trailer, the officers asked if there was any hunting or fishing equipment in the trailer about which they needed to know. Fontaine responded that there was a child's "Snoopy rod and reel" that he had bought for his kid.[1]

¶4.     The officers proceeded to enter the trailer and found several of the items reported as stolen on the den's floor in plain view. Further, the officers observed additional items reported as stolen in Walker's living room and the Fontaines' bedroom. Upon entering the

---

[1] At the time of the burglary, Fontaine, his wife, and their two children lived in a bedroom in Walker's trailer. The Fontaines occupied one of the trailer's bedrooms, and Walker and McDaniel occupied the other bedroom.

Fontaines' bedroom, Officer Varner observed a partially open closet and looked inside it, revealing two BB guns that allegedly were stolen. Additionally, after removing a mattress that was wedged behind the closet door, Officer Varner found several rods and reels, a Browning bow and arrows, NASCAR items, and a large bag containing CDs and movies. After completing their search, the officers took the Fontaines, Walker, and McDaniel into custody.

¶5. After reading Fontaine his Miranda rights,[2] Officer Varner placed Fontaine inside the back of his patrol car. According to Officer Varner, when Detective Bullock walked out of Walker's trailer with rods and reels, Fontaine claimed they belonged to his brother Tony Fontaine. However, at Fontaine's trial, Tony testified otherwise.

¶6. After being taken into police custody, Fontaine provided a written statement explaining his whereabouts on the day of the burglary. According to his written statement, Fontaine got home from work at approximately 3:33 p.m. and took a bath. The statement further explained that he heard a noise and saw Walker carrying a "basket of something." Fontaine then returned to his room, took a nap until 4:30 a.m., and went to work.

¶7. On May 16, 2011, a grand jury indicted Fontaine as a habitual offender on one count of burglary of a nonresidential dwelling and one count of conspiracy to commit burglary of a nonresidential dwelling. Fontaine's trial was set for November 2, 2011. Several days before trial, Fontaine filed a notice of intent to introduce as evidence an affidavit from Walker, who recently had died. In this affidavit, executed on January 6, 2011, Walker denied

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

3

that Fontaine was present when the burglary occurred. Instead, Walker claimed that he was the only person in Cooley's trailer. The State filed a motion in limine to prevent Fontaine from introducing Walker's affidavit at trial. Following a hearing, the circuit court found the affidavit was pure hearsay and untimely. The circuit court granted the State's motion to exclude the affidavit from evidence.

¶8. At Fontaine's trial, McDaniel testified for the State and said that she met with Fontaine and Walker in the kitchen of Walker's trailer to discuss going into "[Cooley's] trailer and take some things." Further, she testified that when they went down to the trailer they tried to go through the front door, but it was locked. So they went to the back of the trailer where Walker went through a window and then opened the front door for her and Fontaine. McDaniel stated that once inside Cooley's trailer, they began "gathering stuff up in a big 'ol blue tote" and started hauling it down to Walker's trailer. She explained that they made two trips to Cooley's trailer to collect "stuff," which included DVDs from the living room, a Dale Earnhardt plaque, bow and arrows, and rods and reels from the bedrooms. Finally, McDaniel testified that the next day, she and Fontaine's wife Miranda hid the stolen items in the bedroom closets of Walker's trailer.

¶9. The State's next witness to testify was David Clayton, a polygrapher retained by defense counsel who interviewed Fontaine prior to trial. During his testimony, the State moved to introduce a two-minute portion of his interview with Fontaine into evidence. Counsel for Fontaine objected to the introduction of the two-minute excerpt on the grounds that the circuit court should admit the remainder of Fontaine's audio-recorded polygraph

4

interview instead of just the excerpt. The judge, overruling the defense's objection, allowed the two-minute excerpt to be played. Counsel for Fontaine, who had control of the audio-recorded interview, never proffered the remainder of the recording.

¶10. As admitted into evidence, the two-minute audio-recorded excerpt reveals a conversation between Fontaine and Clayton where Fontaine tells Clayton his whereabouts on the day of the alleged burglary. During this conversation, Fontaine explains that his wife was interested in looking at Cooley's trailer and as a result went with Walker and McDaniel to look at it. Fontaine claimed that they only looked inside the trailer windows but also said he awoke later that night to Walker returning with a big blue bag. Further, Fontaine stated that the next day Walker mentioned he had a signed Dale Earnhardt picture. Fontaine also claimed that he overheard part of a phone conversation in which Walker and McDaniel discussed "putting something somewhere[.]"

¶11. The jury also heard testimony from Kimberley Cooley, the co-owner of the burglarized trailer. She testified that she recently overheard a conversation between Fontaine and his bail bondsman.[3] She explained that Fontaine told his bondsman that McDaniel allegedly had called the Cooleys and received permission to enter their trailer. Fontaine also purportedly told the bondsman that he entered the Cooleys' trailer with his wife, Walker, and McDaniel, and then the four of them transported the Cooleys' stolen property to Walker's trailer. She testified that Fontaine asked his bondsman if he could apologize to the Cooleys. Kimberly testified that upon hearing these comments she reported them to the police. She

---

[3] Fontaine's bail bondsman subsequently was identified as Tony Graves.

also testified that neither she nor her husband ever gave the Fontaines, Walker, or McDaniel permission to enter their trailer.

¶12. During the defense's case-in-chief, Fontaine's wife Miranda was called to testify about the day of the burglary. She testified that she went to a doctor's appointment, where she was prescribed medication for migraines. She further explained that on the day of the incident, she returned from her doctor's appointment, took her migraine medication, and fell asleep until the next morning. Further, she denied seeing any of the stolen property in Walker's trailer and had no recollection of what happened. She explained that while her family rented a bedroom in Walker's trailer, they used only one of the two closets because the other closet contained Walker's mother's possessions and was off limits.

¶13. Fontaine also testified on his own behalf and denied participating in the burglary. Fontaine stated that on the night of the burglary, he was walking his daughter over to her friend's house to spend the night when they came upon Walker and McDaniel. According to Fontaine, McDaniel pointed out the Cooleys' trailer as the one his wife wanted to rent. He testified that he briefly walked over to the trailer but soon left returning to walk his daughter to her friend's home. Fontaine further testified that, upon returning to Walker's trailer, he spoke with McDaniel about the Cooleys' trailer, explaining to her that he did not really get a chance to look at it. According to Fontaine, McDaniel told him that she would make some calls and gather information about the trailer.

¶14. That night, according to Fontaine, he continued his usual nighttime routine until his homesick daughter returned home. As he was about to go back to sleep, Fontaine testified

that he heard a noise and saw Walker returning to the trailer with a large blue tote. The next day, Fontaine stated that he was at dinner with Walker when Walker told him that he had a Dale Earnhardt picture. Fontaine testified, however, that he knew Walker did not own such an item and that he had a "good idea" it was stolen.

¶15. After considering the evidence in the case, the jury found Fontaine guilty of both burglary of a nonresidential dwelling and conspiracy to commit burglary of a nonresidential dwelling. Accordingly, the circuit court sentenced him to seven years for burglary of a nonresidential dwelling and a consecutive five-year sentence for conspiracy to commit burglary of a nonresidential dwelling.

¶16. On November 14, 2011, Fontaine filed a motion for judgment notwithstanding the verdict or, in the alternate, a new trial, which was denied. Aggrieved, Fontaine appeals.

## DISCUSSION

**I.** **Whether The Circuit Court Erred When It Permitted The State To Introduce A Two-Minute Segment Of Fontaine's Recorded Statement Without Allowing The Remainder Of The Recording Into Evidence**

¶17. This Court applies an abuse of discretion standard of review when considering a trial court's admission of evidence. *Cooper v. State*, 200 So. 3d 1065, 1074 (¶32) (Miss. Ct. App. 2016). Under this standard, "[t]he trial judge has ample power in his sound discretion to limit the introduction into evidence of those portions of the recording which are relevant and material." *Sanders v. State*, 237 Miss. 772, 777, 115 So. 2d 145, 147 (1959). "For a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." *Harrell v. State*, 179 So. 3d 16, 18 (¶9)

7

(Miss. Ct. App. 2014).

¶18.     Fontaine argues that the circuit court erred by overruling his objection and refusing to admit the entire audio-recorded polygraph interview after the State moved to admit a two-minute excerpt.  He asserts that the State took the excerpt out of context, and he contends "[he] was, in fairness, entitled to present and have the jury consider the remainder of the interview under the Rule of Completeness."  However,  Fontaine's failure to proffer the full audio-recorded polygraph interview leaves this Court without the ability to assess whether the trial judge abused his discretion in not admitting the whole interview.  Without the whole audio-recorded polygraph interview, not only has Fontaine failed to preserve the issue on appeal, but also this Court cannot evaluate the interview's evidentiary value or make any determination as to whether or not the trial court committed any error.

¶19.     In Mississippi, the Supreme Court has made it clear that "[appellate courts] adhere to the rule that a record proffer of excluded testimony must be made to preserve the point for appeal."  *Thompson v. State*, 602 So. 2d 1185, 1188 (Miss. 1992).  Further, in *Barron v. State*, this Court reaffirmed the necessity of a proffer being made at the trial court level to preserve the issue for appeal, stating that "before we will consider the matter on appeal the party must have somehow placed in the record the nature and substance of the proffered evidence for our consideration."  *Barron v. State*, 130 So. 3d 531, 539-40 (¶32) (Miss. Ct. App. 2013). Therefore, while the record clearly indicates Fontaine objected to the State's introduction of just the two-minute segment of the audio-recorded polygraph interview, his failure to proffer the remaining contents or substance of the audio-recorded polygraph

8

interview constitutes a waiver of the issue on appeal.

¶20.    Notwithstanding waiver of the issue, Fontaine's failure to proffer the remainder of the audio-recorded polygraph interview leaves this Court without the ability to determine whether the trial court abused its discretion in not allowing admission of the whole recording. Mississippi Rule of Evidence 106, known as the rule of completeness, states that when a party introduces all or part of a writing, recorded statement, or audio recording, then "the adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time." M.R.E. 106.  However, the rule of completeness "does not necessarily require that all the remainder of a document must be offered into evidence, but only that part which '*ought in fairness to be considered*.'"  *Washington v. State*, 726 So. 2d 209, 216 (¶33) (Miss. Ct. App. 1998) (emphasis added).  The complete document, statement, or video also must be more probative than prejudicial.  *Stribling v. State*, 81 So. 3d 1155, 1160 (¶19) (Miss. Ct. App. 2011)*; see also* M.R.E. 403.  The audio-recorded polygraph interview also should be weighed under the other criteria contained in our rules of evidence. *E.g.*, *Rials v. Duckworth*, 822 So. 2d 283, 287 (¶19) (Miss. 2002) (affirming the denial of portions of a police report into evidence under Rule 106 because the report contained hearsay).

¶21.    Without knowing the contents or substance of the remainder of the audio-recorded polygraph interview, this court cannot fairly assess the evidentiary value of the recording nor determine what ought in fairness be considered.  "Of course a recorded statement may contain considerable material which is not relevant or material . . . [, but] [t]he trial judge has

9

ample power in his sound discretion to limit the introduction into evidence of those portions of the recording which are relevant and material." *Sanders*, 237 Miss. at 777, 115 So. 2d at 147. Without any record of the remainder of the audio-recorded polygraph interview, this court cannot assess whether the trial court determination was in error, much less an abuse of discretion.

## II. Whether The Circuit Court Erred In Excluding Walker's Affidavit

¶22. Next, Fontaine argues that the circuit court erred in excluding Walker's affidavit because it was exculpatory and admissible as a statement against interest pursuant to Mississippi Rule of Evidence 804(b)(3). As mentioned above, the circuit court, after a hearing on the matter, gave two reasons for granting the State's motion in limine: (1) Walker's affidavit was untimely noticed, and (2) Walker's affidavit was pure hearsay. Finding no error in the circuit court's determination, we affirm.

¶23. First, the judge found that Fontaine's October 26, 2011, notice of intent to use Walker's affidavit was untimely. Fontaine asserts that this was in error because, according to Fontaine, it was not a true alibi defense and therefore did not have to be timely disclosed pursuant to the then-applicable Uniform Circuit and County Court Rule 9.05.[4] In Mississippi, an alibi has been defined as "a defense that places the defendant at the relevant time of crime in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." *Jackson v. State*, 743 So. 2d 1008, 1014

---

[4] At the time of the pre-trial hearing URCCC 9.05 still was in use. However, as of July 1, 2017, Mississippi Rule of Criminal Procedure 17.4(a) has been adopted and replaced URCCC 9.05.

(¶20) (Miss. Ct. App. 1999) (citing *Black's Law Dictionary* (6th ed.1990)). A cursory review of Walker's affidavit, which stated that Walker was the only person present at the Cooleys' trailer during the burglary and that Fontaine was not at the trailer,[5] clearly places Fontaine in a different place than the scene of the crime and therefore is an alibi defense subject to Rule 9.05's notice requirement.

¶24. Pursuant to Uniform Circuit and County Court Rule 9.05, any defendant who intends to use an alibi defense must, within ten days of receiving a written demand from the prosecuting attorney, serve the prosecutor written notice of his or her intent to offer an alibi defense. *See* URCCC 9.05 (2015). This notice must provide the prosecutor with "the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon which the defendant intends to rely [on] to establish such alibi." *Id.*

¶25. In the present case, the record reveals that Walker executed his sworn affidavit on January 6, 2011. The affidavit was retained by counsel for Fontaine. On March 1, 2011, the State demanded written notice of Fontaine's intent to pursue an alibi defense. This triggered Fontaine's requirement to disclose his intent to use an alibi as a defense. *See Ford v. State*, 862 So. 2d 554, 557 (¶11) (Miss. Ct. App. 2003) ("Only after the prosecuting attorney makes a written demand is the defendant then required to provide a written notice of his intent to offer a defense of alibi."). However, on October 26, 2011, seven days prior to trial, Fontaine

---

[5] In his affidavit, Walker swore: "Michael Fontaine was not in the mobile home located in the Forrest Gardens Mobile Home Park at 20 Lynn Ray Road, Petal, MS on June 22, 2010 when the alleged crime was committed. . . . I was the only person there."

11

filed his notice of intent to use Walker's affidavit. This is clearly after the 10-day notice requirement of Rule 9.05, and therefore the circuit court did not abuse its discretion in finding that Fontaine's notice of intent to use Walker's affidavit was untimely.

¶26. The trial judge also excluded Walker's affidavit because it was pure hearsay. Fontaine asserts that this decision was made in error because Walker's affidavit was admissible as a statement against interest and therefore falls into an exception to the rule against hearsay pursuant to Mississippi Rule of Evidence 804(b)(3).

¶27. "Hearsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *Williams v. State*, 174 So. 3d 275, 278 (¶17) (Miss. Ct. App. 2014) (citing M.R.E. 801(c)). However, a statement may be admissible if it falls within one of the hearsay exceptions set forth by Mississippi Rule of Evidence 804, which requires the declarant to be unavailable. *Id.* Rule 804(a)(4) explains that a declarant is unavailable when he "cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness." M.R.E. 804(a)(4). Rule 804(b)(3) requires that the declarant be unavailable and defines a "statement against interest" as a statement that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it tends to expose the declarant to criminal liability and is offered to exculpate the accused.

12

M.R.E. 804(b)(3)(A)-(B).

¶28. In the present case, both parties agreed that Walker had died prior to the pre-trial hearing and therefore was unavailable pursuant to Rule 804(a)(4). However, the inquiry does not stop there. Next, it must be determined whether the statement was against Walker's interest at the time the statement was made. This is determined "by considering the statement in light of the surrounding circumstances." *Hartfield v. State*, 161 So. 3d 125, 136 (¶15) (Miss. 2015). Further, "the proponent is required to show that the statement clearly and directly implicates the declarant himself in criminal conduct." *Id.*

¶29. During the motion in limine hearing, the burden was on Fontaine to prove that Walker's affidavit, when executed, exposed him to criminal liability. A review of the record reveals that, while Walker's affidavit does place all the criminal liability on him, it also was executed after he had entered a plea of guilty for that conduct and had been sentenced to probation. Further, testimony also indicated that Walker was terminally ill at the time he executed his affidavit and it was at the direction of Fontaine's counsel. Therefore, under these circumstances, it cannot be said that Walker would be exposed to further criminal liability at the time he executed his affidavit. Moreover, even if Walker's affidavit was found to be against his penal interest, Fontaine failed to show the statement's "corroborating circumstances . . . indicate . . . its trustworthiness." M.R.E. 804(b)(3)(B). While the affidavit was sworn, it was created at the direction of Fontaine's counsel and was created after he had pleaded guilty and was sentenced. The trial judge noted such circumstances, commenting: "to say it's not self-serving is an understatement." Therefore, we cannot say the trial judge

13

abused his discretion in finding that Walker's affidavit was pure hearsay.

### III. Whether Fontaine Was Denied A Fair Trial Due To Prosecutorial Misconduct

¶30. Fontaine argues that several instances of prosecutorial misconduct occurred, which infringed upon his right to a fair trial. Specifically, he takes issue with McDaniel's testimony and statements that were made during the State's closing argument. Finding that neither instance rises to the level of prosecutorial misconduct, this issue has no merit.

¶31. The standard of review this Court applies to allegations of prosecutorial misconduct is "[w]here prosecutorial misconduct endangers the fairness of a trial and the impartial administration of justice, reversal must follow." *Anderson v. State*, 154 So. 3d 42, 57 (¶48) (Miss. Ct. App. 2014). Fontaine, in his brief, asserts that the State engaged in prosecutorial misconduct because McDaniel "falsely testified that the State had not promised her anything in exchange for her testimony . . . [, and] the State failed to correct her false testimony." Fontaine asserts that during cross-examination, McDaniel admitted that the State promised to recommend her probation in exchange for her testimony against Fontaine. However, a review of the record does not support this argument.

¶32. As mentioned above, McDaniel did take the stand and testify as part of the State's case-in-chief. On direct, when asked whether she had been promised anything by the State of Mississippi, she responded "[n]o sir" and explained that she knew she was going to court soon and "whatever [her] punishment is, [she'll] take it." Further, on cross examination, she testified that she did not know what punishment she was going to get and that the State did tell her that they would recommend probation for her. However, on re-direct examination,

she testified that the reason she was being honest in court was that she wanted to tell the truth and "just get on with my life." Therefore, it remains unclear if the State promised McDaniel anything in return for her testimony against Fontaine, and as such we cannot say prosecutorial misconduct occurred.

¶33. Next, Fontaine asserts that his trial was prejudiced by the State's improper argument regarding his failure to call two witnesses: Mississippi Power Investigator Mike McQueen and his bail bondsman Tony Graves. Fontaine asserts that the prosecution's comments were made to prejudicially etch into the minds of the jury that the missing witnesses would have testified adversely to Fontaine. However, like his previous allegations of prosecutorial misconduct, this contention lacks merit.

¶34. In instances of alleged prosecutorial misconduct during closing arguments, the standard of review is as follows: "whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Fortenberry v. State*, 191 So. 3d 1245, 1251 (¶18) (Miss. Ct. App. 2015). Further, "[c]ounsel is allowed considerable latitude in the argument of cases." *Id.* "He is not limited to the facts introduced into evidence, but he may argue the deductions and conclusions that may reasonably be drawn therefrom." *Id.*

¶35. In the present case, the State, during closing argument, did impermissibly comment on Mike McQueen, to which defense counsel objected. Following this objection, the Court acknowledged that while McQueen was on the witness list, he never was called as a witness, and therefore his potential testimony was not in evidence. Accordingly, the State withdrew

15

its statement and continued with the closing argument. Therefore, the State's mention about McQueen's presence on the defense's witness list was withdrawn and does not rise to the level of prosecutorial misconduct.

¶36. Similarly, the prosecutor during closing arguments commented on Fontaine's failure to call his bail bondsman. Fontaine argues that this comment also was made to prejudice the jury into believing his bail bondsmen would testify against him. However, a review of the record indicates that an objection to this comment never was made at trial. Therefore, appellate review of this error is procedurally waived. *See Dampier v. State*, 973 So. 2d 221, 234-36 (¶¶38-40) (Miss. 2008) (holding argument that prosecutor made comments that were unsupported by the evidence was procedurally barred because defendant did not object); *see also Ross v. State*, 954 So. 2d 968, 1001 (¶71) (Miss. 2007) (holding "failure to object to the prosecution's statements in closing argument constitutes a procedural bar").

### IV. Whether The Evidence Presented At Trial Was Legally Sufficient To Support The Verdicts

¶37. Fontaine contends that the State's evidence was insufficient to support the guilty verdict on both counts. Specifically he asserts that McDaniel's accomplice-testimony was unreasonable, self-contradictory, and substantially impeached and therefore was not sufficient to support a conviction. Further, Fontaine asserts that the inference of his guilt from possession of stolen property was weak and insufficient to support a conviction.

¶38. When addressing the legal sufficiency of evidence, we consider all evidence in the light most favorable to the State. *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (abrogated on other grounds by *Little v. State*, 233 So. 3d 288 (Miss. 2017)). Credible

16

evidence consistent with guilt must be accepted as true. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). The relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush*, 895 So. 2d at 843 (¶16). Further, "[i]t is within the discretion of the jury to accept or reject testimony by a witness, and the jury may give consideration to all inferences flowing from the testimony." *Johnson v. State*, 832 So. 2d 1263, 1265 (¶3) (Miss. Ct. App. 2002) (quotation marks omitted).

¶39. Having reviewed the evidence in the case, we find that it was sufficient. We first must note that "the jury is the sole judge of the credibility of the witness." *Harris v. State*, 970 So. 2d 151, 156 (¶20) (Miss. 2007). Therefore, although McDaniel's testimony and the testimony of Fontaine's witnesses may conflict, the jury was entitled to believe whomever's story they found to be most credible. McDaniel's testimony and the corroboration provided by other State witnesses supplied sufficient evidence for conviction on both counts. McDaniel testified that she, Fontaine, and Walker agreed to break into the Cooleys' trailer and take the property that was stored there. Further, she testified that while they were unable to enter through the front door, Walker entered a window and let the other two in through the front door. McDaniel went on to testify about how they gathered up all the items in a blue tarp including: rods and reels, CDs, movies, a Browning bow, arrows, and NASCAR stuff and carried them to Walker's trailer, where they all three lived. Moreover, McDaniel testified that the next morning, she and Miranda gathered the stolen property and placed it in various closets throughout the house.

17

¶40.    McDaniel's version of the events was consistent with the testimony of Officer Varner, who investigated the initial report of stolen goods.  Officer Varner testified that he was shown the window through which the perpetrators entered the trailer and that the stolen property was recovered in Fontaine's bedroom.  He testified that the stolen property included CDs, movies, an old Browning bow, arrows, rods and reels, and NASCAR stuff.  Further, Officer Varner testified that Fontaine stated the rods and reels belonged to his brother Tony. Tony, however, testified that he did not give any fishing poles to his brother around the day of the incident, and while Tony had similar fishing equipment, he did not recognize all of the equipment recovered from Walker's trailer.

¶41.    In short, reasonable jurors could have reached different conclusions regarding each element of the offenses.  Therefore, this issue is without merit.

### V.    Whether The Jury's Verdicts Were Against The Overwhelming Weight Of The Evidence

¶42.    "A challenge to the weight of the evidence is separate and distinct from a challenge to the legal sufficiency of the evidence."  *Thomas v. State*, 48 So. 3d 460, 469 (¶20) (Miss. 2010) (citing *Fleming v. State*, 732 So. 2d 172, 183 (¶ 36) (Miss. 1999)).  When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, "we weigh the evidence in the light most favorable to the verdict, 'only disturbing a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'"  *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017) (quoting *Lindsey v. State*, 212 So. 3d 44, 45 (¶4) (Miss. 2017)).  Therefore, "when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the

weight and worth of their testimony." *Id*. (¶20).

¶43. Applying this standard here, we find that there was no abuse of discretion. Viewing the evidence in a light most favorable to the verdict, the trial court did not sanction an "unconscionable injustice." McDaniel testified that Fontaine was involved in the burglary of the Cooleys' trailer, and the stolen items were recovered in his bedroom. Any conflicting portions of McDaniel's testimony were thoroughly presented to the jury. The jury resolved these conflicts and concluded that beyond a reasonable doubt Fontaine was guilty of both conspiracy and burglary of a nonresidential dwelling. Therefore, this issue is without merit.

## CONCLUSION

¶44. In summary, Fontaine's failure to proffer the full audio-recorded polygraph interview procedurally bars this Court from reviewing Fontaine's assigned error and leaves this Court without the ability to review the contents. Further, the circuit judge did not err in excluding Walker's affidavit, and the alleged prosecutorial misconduct did not result in an unfair trial. Moreover, the evidence presented was legally sufficient to return guilty verdicts, and the jury's verdicts were not against the overwhelming weight of the evidence. Therefore, we affirm the circuit court's denial of Fontaine's motion for judgment notwithstanding the verdict or, in the alternate, a new trial.

¶45. **AFFIRMED.**

**LEE, C.J., AND FAIR, J., CONCUR. BARNES AND WILSON, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., AND TINDELL, J., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, J.; IRVING, P.J., JOINS IN PART.**

**CARLTON, J., DISSENTING:**

¶46. I respectfully dissent from the majority's opinion. Among the issues he raises on appeal, Fontaine asserts that the circuit court erred by allowing the State to introduce a two-minute excerpt from his audio-recorded polygraph interview while also denying his request to admit the remainder of the interview. Because I find Fontaine was entitled to have the remainder of his recorded statement about the offenses admitted into evidence after the State introduced an excerpt of the taped statement, I would reverse Fontaine's convictions and remand the case for further proceedings.[6] In so finding, I recognize that Fontaine's polygraph interview "may contain considerable material which is not relevant or material" and that a "trial judge has ample power in his sound discretion to limit the introduction into evidence . . . those portions of the recording which are relevant and material." *Sanders v. State*, 237 Miss. 772, 777, 115 So. 2d 145, 147 (1959).

¶47. On June 23, 2010, Petal Police Department Officer Rick Varner responded to a call about a burglary complaint at a local trailer park. Upon arriving at the trailer park, Officer Varner spoke with William Cooley, who reported that his trailer had been burglarized. Although in the midst of moving, William and his wife, Kimberly Cooley, still had some of their belongings in the trailer. William returned to the trailer on June 23, 2010, to discover

---

[6] Mississippi precedent recognizes that, where the State introduces only part of a writing or recorded statement, the defendant is entitled to introduce other related portions that are relevant and material, and a failure to allow the defendant to do so can constitute reversible error. *See Lomax v. State*, 192 So. 3d 975, 989 (¶71) (Miss. 2016) (Kitchens, J., concurring); *Kniep v. State*, 525 So. 2d 385, 390-91 (Miss. 1988); *Jones v. State*, 342 So. 2d 735, 736 (Miss. 1977); *Sanders v. State*, 237 Miss. 772, 776-77, 115 So. 2d 145, 146-47 (1959).

20

that several items were missing. After verifying that his wife had not removed the items, William contacted the police and reported the following items stolen: fishing rods and reels, NASCAR collectibles, CDs, DVDs, a bow, and arrows. William showed Officer Varner a window that the perpetrators used to enter his trailer.

¶48. Along with Officer Varner, Petal Police Department Investigator Ken Bullock investigated the burglary. The officers received information that the stolen property might be in another trailer in the trailer park owned by Mark Walker. When the police arrived at Walker's trailer, they found Walker, his girlfriend Aundrea McDaniel, and his co-worker Fontaine sitting on the front porch. At the time of the burglary, Fontaine, his wife Miranda, and their two children lived in a bedroom in Walker's trailer. The Fontaines occupied one of the trailer's bedrooms, and Walker and McDaniel occupied the other bedroom.

¶49. After obtaining Walker's consent, the police searched his trailer. Prior to the search, Officer Varner asked whether there was any hunting or fishing equipment or other items in the trailer about which the officers needed to know. Fontaine responded that the only fishing equipment he knew of was a child's rod and reel he bought for his child.

¶50. Officer Varner and Investigator Bullock proceeded to search the trailer. The officers observed some of the stolen items in plain view on Walker's den floor. They observed additional items reported stolen in Walker's living room and in the bedroom occupied by the Fontaines. After entering the Fontaines' bedroom, Officer Varner noticed a partially open closet door. Officer Varner glanced inside the closet and saw two BB guns that also were reported stolen. After removing a mattress wedged behind the closet door, Officer Varner

21

discovered several fishing rods and reels, a Browning bow, arrows, NASCAR memorabilia, and a bag containing CDs and movies. The officers also discovered some stolen items in Walker's bedroom. After completing their search, the police took the Fontaines, Walker, and McDaniel into custody.

¶51. After reading Fontaine his constitutional rights, Officer Varner placed Fontaine into the back of his patrol car. According to Officer Varner, when Investigator Bullock exited Walker's trailer holding the fishing equipment, Fontaine claimed the equipment belonged to his brother, Tony Fontaine. At Fontaine's trial, however, Tony testified that he did not know to whom the fishing equipment belonged. While stating that he owned some similar fishing equipment, Tony testified that he did not recognize all the equipment recovered from Walker's trailer. Tony also denied that he gave the fishing equipment to his brother.

¶52. After being taken into police custody, Fontaine provided a written statement of his whereabouts on the day of the burglary. In the pretrial statement, Fontaine said that he got home from work around 3:33 p.m. and took a bath. He claimed that he heard a noise and saw Walker toting a "basket of something[.]" Fontaine then wrote that he returned to his bedroom and slept until his daughter returned from her friend's house. Fontaine next stated that he got up around 4:30 a.m. the following day to go to work.

¶53. On May 16, 2011, a grand jury indicted Fontaine as a habitual offender of burglary of a nonresidential dwelling and conspiracy to commit burglary of a nonresidential dwelling. Fontaine's trial was set for November 2, 2011. Several days before his trial, Fontaine filed a notice of intent to use an affidavit from Walker, who had died. In his affidavit executed

on January 6, 2011, Walker denied that Fontaine was present when the burglary occurred. Instead, Walker claimed that he was the only person at the Cooleys' trailer. The State filed a motion in limine and sought to prevent Fontaine from introducing Walker's affidavit at trial. Following a hearing, the circuit court found the affidavit was hearsay and self-serving and had been untimely disclosed. The circuit court therefore granted the State's motion to exclude the affidavit at trial.

¶54. At Fontaine's trial, McDaniel testified for the State and said that she helped Walker and Fontaine burglarize the Cooleys' trailer. McDaniel stated that Walker entered the Cooleys' trailer through a back window and then opened a door for her and Fontaine. McDaniel testified that she helped Walker and Fontaine gather items from the Cooleys' trailer into a blue tote bag and transport the stolen items back to Walker's trailer. According to McDaniel, the stolen items included DVDs, a Dale Earnhardt plaque, fishing equipment, a bow, and arrows. McDaniel further testified that the next morning she and Fontaine's wife Miranda hid the stolen items in the bedroom closets of Walker's trailer.

¶55. During testimony given by a polygrapher named David Clayton, the State moved to introduce into evidence a two-minute segment of an interview between Clayton and Fontaine. Prior to trial, the defense retained Clayton to examine Fontaine.[7] The defense objected to the introduction of the two-minute interview excerpt on the ground that the circuit court should admit the remainder of Fontaine's statement about the offenses into evidence instead of just a short excerpt. Without providing a basis for its ruling, the circuit court overruled the

[7] No mention was made before the jury about Clayton's profession or his administration of the polygraph examination on Fontaine.

23

defense's objection and allowed the State to admit the interview clip.

¶56. During the audio-recorded excerpt, Fontaine told Clayton his movements on the day of the burglary. While speaking with Clayton, Fontaine stated his wife was interested in renting the Cooleys' trailer. As a result, Fontaine said he went to look at the trailer on the day of the burglary with Walker and McDaniel. Fontaine claimed that they only looked inside the trailer windows. Fontaine then said that he awoke later that night and saw Walker returning with a big blue bag. The next day, Fontaine said that Walker mentioned he had a signed Dale Ernhardt picture. Fontaine also claimed during the interview that he overheard part of a phone conversation in which Walker and McDaniel discussed "putting something somewhere[.]"

¶57. The jury also heard testimony from Kimberly, the co-owner of the burglarized trailer. Kimberly testified that, while sitting in front of Fontaine at his pretrial hearing, she overheard a conversation between Fontaine and his bondsman. Kimberly testified that Fontaine told his bondsman that McDaniel allegedly had called the Cooleys and received permission to enter their trailer. Fontaine also purportedly told the bondsman that he entered the Cooleys' trailer with his wife, Walker, and McDaniel, and then the four of them transported the Cooleys' stolen property to Walker's trailer. Kimberly further testified that Fontaine had asked his bondsman if Fontaine could apologize to the Cooleys. Kimberly stated that, upon hearing these comments, she reported them to the police. She also testified that neither she nor her husband ever gave the Fontaines, Walker, or McDaniel permission to enter the trailer.

¶58. During the defense's case-in-chief, Fontaine's wife, Miranda, testified about the day

24

of the burglary. Miranda stated that, after taking medicine for a migraine, she fell asleep around 1:45 p.m. and did not awake until the next day. Miranda denied seeing any of the Cooleys' stolen property in Walker's trailer either prior to or after the time she awoke, and she denied participating in the burglary. Miranda stated that the bedroom her family rented in Walker's trailer had two closets. Although the Fontaines used one of the closets, Miranda testified the other closet was off limits because Walker stored his mother's possessions there.

¶59. Fontaine also testified on his own behalf and denied participating in the burglary. Fontaine stated that on the evening of the burglary, he was walking his daughter over to her friend's house to spend the night when they encountered Walker and McDaniel. According to Fontaine, McDaniel pointed out the Cooleys' trailer as the one his wife wanted to rent. Fontaine testified that he briefly walked over to the trailer before continuing with his daughter. Fontaine further testified that, when he returned to Walker's trailer, McDaniel asked him how he liked the Cooleys' trailer. When Fontaine answered that he had not really gotten to see the trailer yet, McDaniel purportedly told him that she would make some calls to gather information about the trailer. Fontaine stated that he then continued his usual nighttime routine.

¶60. During the night, Fontaine testified that his daughter unexpectedly returned home because she was homesick. As he was just about to go back to sleep, Fontaine stated that he heard another noise and saw Walker pulling a big blue tote bag into the trailer. The next day, Fontaine testified that Walker claimed he had a Dale Earnhardt picture. Fontaine testified, however, that he knew Walker did not own such an item and therefore suspected the picture

25

was stolen. Consistent with his wife's testimony, Fontaine stated that his family did not use the bedroom closet where Walker stored his mother's belongings.

¶61. The jury found Fontaine guilty of both burglary of a nonresidential dwelling and conspiracy to commit burglary of a nonresidential dwelling. The circuit court sentenced Fontaine to seven years for burglary of a nonresidential dwelling and to a consecutive five-year sentence for conspiracy to commit burglary of a nonresidential dwelling. The circuit court further ordered that both sentences be served in the custody of the Mississippi Department of Corrections without the benefit of probation, parole, or early release. Fontaine filed an unsuccessful motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. Aggrieved, Fontaine appeals.

¶62. On appeal, Fontaine asserts the circuit court erred by refusing his request to admit his entire polygraph interview into evidence after the State moved to admit a two-minute excerpt. Fontaine claims the State took the excerpt out of context, and he contends "[he] was, in fairness, entitled to present and have the jury consider the remainder of the interview under the Rule of Completeness." We review the circuit court's admission or exclusion of evidence for abuse of discretion. *Cooper v. State*, 200 So. 3d 1065, 1074 (¶32) (Miss. Ct. App. 2016). Because I find this issue dispositive, I decline to address Fontaine's remaining assignments of error on appeal.

¶63. Mississippi Rule of Evidence 106 embodies the common-law rule of completion. Rule 106 states that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other

26

writing or recorded statement – that in fairness ought to be considered at the same time."

"[R]ule 106 does not necessarily require that when a witness is questioned about a prior written or recorded statement that all the remainder must be offered into evidence, but only that part which 'ought in fairness to be considered.'" *Payton v. State*, 897 So. 2d 921, 945 (¶85) (Miss. 2003) (quoting *Welch v. State*, 566 So. 2d 680, 690 (Miss. 1990)).

¶64.    The Mississippi Supreme Court has held that "any evidence pertaining to a witness's offer to take a polygraph, refusal to take a polygraph test, the fact that a witness took a polygraph test[,] or the results of a polygraph test is inadmissible at trial by the State or by the defense." *Weatherspoon v. State*, 732 So. 2d 158, 163 (¶15) (Miss. 1999).  However, our caselaw also recognizes that "even if evidence is otherwise inadmissible, one party can open the door to its admission." *Payton*, 897 So. 2d at 945 at (¶86).  Furthermore, "[i]t is the general rule, almost unanimously followed, that where the State introduces evidence of statements made by the defendant immediately after a crime, [the] defendant is entitled to bring out the whole of his statement." *Tigner v. State*, 478 So. 2d 293, 296 (Miss. 1985) (quoting *Jones v. State*, 342 So. 2d 735, 737 (Miss. 1977)).  As our supreme court has explained:

> In the proof of confessions, the whole of what the accused said on the subject at the time of making the confession should be taken together.  The prosecution is entitled to show the whole statement, or if any part is omitted, the accused is entitled to supply it.  It is also well settled that if a confession is made under such circumstances as to authorize its admission in[to] evidence, the accused is entitled to have the entire conversation, including any exculpatory or self-serving declarations connected therewith, also admitted.

*Sanders*, 237 Miss. at 776, 115 So. 2d at 146-47 (citation omitted).

27

¶65. In the present case, the State moved to introduce into evidence a two-minute excerpt about the offenses from Fontaine's audio-recorded statement to Clayton. The defense objected to only part of the recording being admitted but failed to proffer the content of the remainder of Fontaine's statement to Clayton. Even so, the record reflects the parties raised no dispute that the remainder of Fontaine's statement to Clayton was consistent with his trial testimony as to the details of what occurred during the time of the burglary and therefore would be material as to the veracity of Fontaine's trial testimony. Without any explanation or stated basis for its ruling, the circuit court overruled Fontaine's objection at trial and allowed the State to introduce only the interview excerpt into evidence.

¶66. Upon review, I find the circuit court abused its discretion by refusing Fontaine's request to admit the entire polygraph interview into evidence after the State introduced the two-minute excerpt.[8] The State's introduction of the interview excerpt opened the door to the admission of additional relevant or material portions of the interview that, in fairness, ought to have been considered. *See Payton*, 897 So. 2d at 945 (¶¶85-86). *See also Sanders*, 237 Miss. at 777, 115 So. 2d at 147 (recognizing that a recording "may contain considerable material which is not relevant or material" and that a "trial judge has . . . discretion to limit the introduction into evidence . . . those portions of the recording which are relevant and material"). I therefore would reverse Fontaine's convictions and remand the case for further

---

[8] *See Kniep*, 525 So. 2d at 390-91; *Sanders*, 237 Miss. at 776-77, 115 So. 2d at 146-47. *See generally Lomax*, 192 So. 3d at 989 (¶71) (Kitchens, J., concurring) (discussing the holding in *Sanders* and the rule of completeness); *Jones*, 342 So. 2d at 736 (acknowledging a defendant's right to introduce into evidence additional relevant and material parts of a statement where the opposing party introduces only a selected portion of the statement).

28

proceedings consistent with this opinion. Accordingly, I respectfully dissent from the majority's opinion.

**WESTBROOKS, J., JOINS THIS OPINION. IRVING, P.J., JOINS THIS OPINION IN PART.**